WASHINGTON STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO, et al., Plaintiffs-Appellees,

v.

The Honorable John C. SPELLMAN, Governor of the State of Washington, et al., Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

STATE OF WASHINGTON, et al., Defendants-Appellants.

WASHINGTON STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO, et al., Plaintiffs-Appellees,

v.

The Honorable John C. SPELLMAN, et al., Defendants,

and

Don't Waste Washington Legal Defense Foundation, Intervenor-Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

STATE OF WASHINGTON, et al., Defendant,

and

Don't Waste Washington Legal Defense Foundation, Intervenor-Defendant-Appellant.

Nos. 81–3453, 81–3454, 81–3460 and 81–3461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1982.

Decided Aug. 17, 1982.

Michael B. Crutcher, Seattle, Wash., argued for Washington State Bldg. et al.; W. Russell Daggatt, Catherine B. Roach, Roberta R. Katz, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., on brief.

Michael Hanbey, Asst. Atty. Gen., Olympia, Wash., argued for Spellman, et al.; Kenneth O. Eikenberry, Atty. Gen., Kenneth M. MacIntosh, Asst. Atty. Gen., Olympia, Wash., on brief.

Michael W. Gendler, Seattle, Wash., for amicus curiae.

Before GOODWIN and POOLE, Circuit Judges, and EAST *, District Judge.

---

\* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

GOODWIN, Circuit Judge

The district court granted summary judgment in favor of the United States and certain commercial users of a low-level radioactive waste disposal site in the State of Washington. The decision, reported at 518 F.Supp. 928 (E.D. Wash. 1981), struck down as unconstitutional a Washington statute closing the borders of Washington to the entry of low-level radioactive waste originating outside the state. Don't Waste Washington (DWW), a public interest group which had sponsored the challenged initiative legislation, appeals the denial of leave to intervene as a party. The State appeals the summary judgment.

For more than fifteen years, the State of Washington has leased from the United States 1,000 acres in an area known as the Hanford Reservation. During this time, the State has sub-leased part of the land for use as a commercial low-level radioactive waste dump. By arrangement with the United States under § 274 of the Atomic Energy Act (42 U.S.C. § 2021), Washington monitors the dumping site (Richland) and inspects shipments of waste to determine their compliance with state and federal regulations concerning radioactive material. The State also licenses users and collects a fee from them.

Richland is one of three low-level radioactive dump sites in operation nationwide and receives about 40 percent of the country's low-level radioactive waste. It is also the only currently operating site accepting absorbed-liquid low-level radioactive waste. Approximately 95 percent of the waste received by Richland originates outside the State of Washington.

In November 1980, the voters of the State of Washington enacted Initiative Measure No. 383 ("383") prohibiting the transportation and storage within Washington of radioactive waste produced outside the state. The initiative also gave permission for the state to enter into an interstate compact to solve the problem of radioactive waste on a regional basis. Federal legislation had already provided for military and high level radioactive wastes.

After the Washington initiative was approved by the voters, Congress passed the Low-Level Radioactive Waste Policy Act of 1981 (Pub.L. No. 96–573, 94 Stat. 3347, hereinafter referred to as the "Low-Level Waste Act") encouraging the use of compacts between and among states to accomplish regional storage of low-level radioactive waste. At the time the Low-Level Waste Act was passed, Congress was aware of the enactment of 383 in Washington.

The operator of the site, together with seven other plaintiffs, filed an action in district court seeking a declaration that 383 was unconstitutional and requesting injunctive relief. Shortly afterward, the United States of America filed a similar action.

The parties concede that regulation of the disposal of high-level radioactive waste has been preempted by the federal government and that this area is therefore not susceptible to regulation by the states. The dispute concerns the power of a state to regulate within its borders the importation and disposal of low-level radioactive waste such as filter sludges, resins, filter bottoms, used gloves and protective clothing, rags, tools, papers, plastic and material used in the manufacture of smoke detectors, luminous dials and emergency exit signs.

The government and the users of the Richland site attack the state statute on two grounds: (1) the Atomic Energy Act and the Low-Level Waste Act preempt state action; and (2) Measure 383 violates the Commerce Clause of the United States Constitution. The State of Washington contends that § 274 of the Atomic Energy Act and the interstate compact provision of the Low-Level Waste Act cede control to the state over low-level waste disposal in general. The State also argues that 383 does not violate the Commerce Clause.

■ DWW appeals the district court's denial of its motion to intervene either as a matter of right under Federal Rules of Civil Procedure 24(a), or under Rule 24(b)'s provision for permissive intervention.

Denial of DWW's motion to intervene was error and accordingly we reverse as to

that holding. Rule 24 traditionally has received a liberal construction in favor of applicants for intervention. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1904 (1972). DWW, as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a). However, while we sustain DWW's appeal, this reversal does not require a new trial because the holding of the case would not be changed. DWW was permitted to participate in the argument on the appeal from the order granting summary judgment, and its contentions were duly considered. We conclude that the district court was correct in granting summary judgment to the plaintiffs. No genuine issue of fact exists. Initiative 383 violates the Supremacy Clause and the Commerce Clause of the United States Constitution.

## I. Supremacy Clause

■ The initiative violates the Supremacy Clause because it seeks to regulate legitimate federal activity and to avoid the preemption of the Atomic Energy Act. Neither § 274 of the Act nor the Low-Level Waste Act is a grant of total authority to the states over the disposal of low-level wastes within their own borders.

The regulation of the disposal of low-level radioactive waste is a legitimate federal activity, and Congress has not waived or delegated its authority over the subject. The United States' § 274 agreement with the State of Washington gives the State authority over such matters as licensing, inspection, and levying of lease and maintenance fees. However, as the district court correctly points out, complete control of the Richland site did not pass with the assignment of regulatory responsibilities.

The Low-Level Waste Act comes closer to yielding control of disposal sites to the states in which the sites are located. The Act permits the establishment and operation of regional disposal facilities through interstate compacts. Because Congress specifically gives permission for regional disposal in this Act, states signatory to a compact could exclude waste from nonsignatory states without violating the Supremacy or Commerce Clauses. Permission to exclude such wastes, however, is conditioned on participation in a compact.

The State of Washington has signed the proposed Northwest Interstate Compact on Low-Level Radioactive Waste Management (Northwest Compact) with Oregon, Idaho, Montana and Utah. As of this date, the proposed compact has not received Congressional approval. Until the state participates in a compact which has become law, the Low-Level Waste Act does not grant power to any state to close its borders to interstate traffic in low-level waste.

In any case, Initiative 383 was not framed in terms of the Northwest Compact. It was an unqualified closing of the Richland facility to all out-of-state users. As such, it violates the Supremacy Clause.

## II. Commerce Clause

■ Initiative 383 also violates the Commerce Clause. The initiative is based upon an impermissible exercise of the State of Washington's police powers. Congress has established in the Atomic Energy Act a pervasive statutory scheme to regulate nuclear activity. As discussed above, through § 274 of the Act and through the Low-Level Waste Act, Congress has also ceded some regulatory authority to the states. But Congress stopped short of granting the states power to ban wastes transported from outside their borders.

■ Even in the absence of pervasive federal legislation, "the Commerce Clause prevents the States from erecting barriers to the free flow of interstate commerce." *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978). A state statute may affect commerce without violating the Commerce Clause, however, if the statute serves a legitimate state interest and if it is applied in a nondiscriminatory manner. *Id.*

■ The criteria for determining whether the Commerce Clause has been violated are articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25

L.Ed.2d 174 (1970). The *Pike* test asks whether the state law (1) regulates even-handedly; (2) accomplishes a legitimate local public purpose; and (3) has only an incidental effect on interstate commerce.

Low-level waste from within Washington and that traveling through the state are exempted from the initiative. Only out-of-state waste bound for disposal within Washington is banned. Such uneven treatment of in-state and out-of-state parties fails the first part of the *Pike* test.

This facial discrimination, in turn, "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979). The initiative cannot withstand this level of scrutiny.

A challenge to bona fide safety regulations must overcome a strong presumption of validity. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959). However, the Supreme Court has recently held that "the incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack." *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 670, 101 S.Ct. 1309, 1316, 67 L.Ed.2d 580 (1981).

The state relies upon the proposition that "releases of radioactive materials and emissions to the environment are inimical to the health and welfare of the people of Washington . . . ." Initiative 383, § 1. Undoubtedly, the release of radioactive materials and emissions is inimical to the safety of the people of any state. The State of Washington neglects to address, however, the manner in which local waste, transported and stored within Washington has superior safety and environmental virtues over waste produced elsewhere and similarly controlled by state regulatory measures. Initiative 383, therefore, also fails the second part of the *Pike* test.

Finally, Initiative 383 has more than an incidental effect on interstate commerce. Washington receives two-fifths of the country's low-level radioactive waste and has the only site currently available to receive absorbed-liquid low-level waste. Closing Washington's borders would significantly aggravate the national problem of low-level waste disposal. Thus, 383 fails to meet the last part of the *Pike* test and violates the Commerce Clause.

Further, 383 fails to qualify under either the market participant or quarantine theory exceptions to the Commerce Clause. The State's contention that it is a "market participant," thereby placing the initiative beyond the reach of the Commerce Clause, is unconvincing. The State argues that 383 is a proprietary measure enacted to limit the state's participation in the waste disposal market. Whether or not the State is a proprietor of the Richland site, the initiative is cast in state regulatory rather than in proprietary terms. The measure is based on public safety rather than on economic considerations. The measure denies entry of waste at the state's borders rather than at the site the State is operating as a market participant. The measure establishes civil and criminal penalties which only a state and not a mere proprietor can enforce.

The State's quarantine theory is equally unconvincing. Under the quarantine theory, a state may close its borders to protect citizens against health hazards such as epidemics.

In *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), however, the Supreme Court held that one state may not "isolate itself from a problem common to many by erecting a barrier against the movement of interstate trade." *Id.* at 628, 98 S.Ct. at 2538. In that case, the out-of-state user of a New Jersey disposal site challenged a New Jersey statute prohibiting the importation of out-of-state waste. The New Jersey statute, like the Washington initiative, protected the health of the individual state's citizens while ignoring the nationwide problem of waste disposal. The Supreme Court found the measure "blocks the importation of waste in an obvious effort to saddle those outside the State with the entire burden of slowing the flow

of refuse into New Jersey's remaining land-fill sites. That legislative effort is clearly impermissible under the Commerce Clause of the Constitution." *Id.* at 629, 98 S.Ct. at 2538. Thus, Initiative 383 fails to come within either the market participant or the quarantine theory exceptions to the Commerce Clause.

Affirmed.