**FOREST CONSERVATION COUNCIL; Maricopa Audubon Society; Carlson Forest Watch; Greater Gila Biodiversity Project; Southwest Center for Biological Diversity, et al., Plaintiffs–Appellees,**

v.

**UNITED STATES FOREST SERVICE, Defendant,**

**The State of Arizona, ex rel. M.J. Hassell, Commissioner, Arizona State Land Department; Apache County, a political subdivision of the State of Arizona, Applicants–in–Intervention–Appellants.**

No. 95–15341.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1995.

Decided Sept. 25, 1995.

Mary Mangotich Grier, Assistant Attorney General, for applicant-in-intervention-appellant State of Arizona. Norman D. James and Jay L. Shapiro, Ryley, Carlock & Applewhite, Phoenix, Arizona, for applicant-in-intervention-appellant Apache County.

Peggy Hennessy and Gary K. Kahn, Reeves, Kahn & Eder, Portland, Oregon, for plaintiffs-appellees.

Before D.W. NELSON, T.G. NELSON, Circuit Judges and SAMUEL J. KING,* District Judge.

\* The Honorable Samuel J. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. Because we conclude that the appellants are entitled to intervene as a matter of right, we do not reach the issue of permissive intervention. *Sierra Club v. United States EPA*, 995 F.2d 1478, 1480 n. 4 (9th Cir.1993).

## OPINION

D.W. NELSON, Circuit Judge:

The State of Arizona and Apache County, Arizona appeal the district court's denial of their motions to intervene under Fed. R.Civ.P. 24. The action in which they seek to intervene was brought by environmental organizations including the Forest Conservation Council (collectively "FCC") alleging that the United States Forest Service ("USFS" or "Forest Service") was violating the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* and the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.* by implementing its guidelines for the management of Northern Goshawk habitat on national forest lands. The State of Arizona and Apache County, Arizona, moved to intervene either as of right or permissively under Fed. R.Civ.P. 24.[1] The district court denied appellants' motions but instead granted them amicus status.

■ We have jurisdiction pursuant to 28 U.S.C. § 1291.[2] We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

FCC brought suit in district court alleging that the Forest Service violated NEPA by failing to prepare an environmental impact statement assessing, on a region-wide and forest-wide basis, its guidelines for the management of Northern Goshawk habitat.[3] 42 U.S.C. § 4332. FCC further alleged that the Forest Service violated the NFMA by failing to amend its Regional Guide and Land and Resource Management Plan ("LRMP") to include the recommendations and changes indicated in the management guidelines. 16 U.S.C. § 1604. FCC's complaint sought both a declaration that the Forest Service was violating the federal laws as claimed, and an

2. Denial of a motion to intervene as of right under Rule 24(a)(2) is appealable as a final order within the meaning of 28 U.S.C. § 1291. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir.1983).

3. Officially, these guidelines are referred to as the *Management Recommendations for the Northern Goshawk* ("MRNG").

injunction "prohibiting the [Forest Service], its agents, successors, assigns, contractors, and employees from allowing, permitting, authorizing or taking any action in connection with the sale of timber and any other decisions in Northern Goshawk habitat until it complies with the requirements of [NEPA] and [NFMA]." Complaint at 12 ¶ 3.

The State of Arizona moved to intervene as of right on behalf of M.J. Hassell, the Commissioner of the Arizona State Land Department, an agency of the State of Arizona with fiduciary responsibility for managing the 9.5 million acres of School Trust Lands granted to the State by the federal government when Arizona was admitted to the Union. *See* Arizona–New Mexico Enabling Act, 36 Stat. 557, §§ 24–30 (1910); *Andrus v. Utah,* 446 U.S. 500, 522–24, 100 S.Ct. 1803, 1814–16, 64 L.Ed.2d 458 (1980) (Powell, J., dissenting). Many of the State Trust Lands are adjacent to National Forest lands. The State Land Department is statutorily obligated to manage these lands and the revenues they generate for the benefit of the trust and its beneficiaries. Arizona–New Mexico Enabling Act, 36 Stat. 557, § 28 (1910); *Lassen v. Arizona ex rel. Arizona Highway Dept.,* 385 U.S. 458, 460, 466–70, 470–74, 87 S.Ct. 584, 590–92, 17 L.Ed.2d 515 (1967); *Berry v. Arizona State Land Dep't,* 133 Ariz. 325, 327, 651 P.2d 853, 855 (1982). The State asserted that its interests would be adversely affected by the injunctive relief that plaintiffs sought because the suspension of all forest management activities in national forests would increase the likelihood of catastrophic forest fires, as well as the spread of pests and disease, that could affect State Trust Lands. Furthermore, the State asserted that the relief sought would directly affect the State Trust Lands by suspending the federal funding of programs which support forest management activities on those lands. *See* Forestry Assistance Act of 1978, Pub.L. No. 95–313, 92 Stat. 365 (codified at 16 U.S.C. §§ 1510, 1606, 2101–2111); Ariz.Rev.Stat. Ann. §§ 37–481, 37–482, 37–622 (1994). The State also alleged that it receives between six and seven million dollars annually in "Forest Reserve" funds from the proceeds of USFS's sale of timber and other forest products in Arizona's national forests, which would be suspended by the injunction sought by plaintiffs. 16 U.S.C. §§ 499, 500 (1988). Lastly, the State argued that its rights and obligations under its "Joint Powers Agreement" with the United States Departments of Agriculture and the Interior would be adversely affected by the injunction requested by the plaintiffs because the State Land Commissioner/Forester is contractually obligated to provide fire suppression activities both on State Trust Lands and on other federal lands, as requested. Ariz.Rev.Stat.Ann. § 37–623 (1994). The State alleged that its ability to protect its interests would be impaired by the plaintiffs' action and that the federal defendants would not adequately represent their interests. Neither the Forest Service nor FCC objected to the State's motion to intervene.

Subsequently, Apache County, Arizona ("County"), a political subdivision of the State of Arizona located in the northeastern portion of Arizona, filed a separate motion to intervene as of right, or, alternatively, permissively. The County asserted that the relief sought by the plaintiffs would adversely affect its interest in the revenues it receives from taxes and fees it imposes on the use of federal public lands, which are used to fund local school districts and various county functions. The County also asserted that the injunctive relief sought by plaintiffs would directly affect its contracts with the USFS for use and maintenance of roads over national forest land as well as for the Forest Service's construction of three recreational improvement projects on federal land, using Apache County's Arizona State Lake Improvement Fund grants. Ariz.Rev.Stat.Ann. § 5–382 (1994). The County also argued that the requested injunctive relief would affect the County's ongoing effort to develop its Land Use and Resource Policy Plan. *See* Ariz.Rev.Stat.Ann. § 11–806 (1994). The USFS' response indicated that the agency had no objection to the County's motion to intervene.

The district court denied the State's and County's motions to intervene. Although it found that the appellants' motions were timely and that they "ha[d] made compelling common-sense arguments which would satis-

fy the protectable interest requirement in most litigation contexts," it concluded that "they have failed to demonstrate protectable interests implicated by Plaintiffs' NEPA action." The district court applied the same rationale to find the State and County had not asserted protectable interests affected by plaintiffs' action under the NFMA. The court also denied the appellants' request for permissive intervention, finding no common questions of law or facts. The court permitted the appellants to file briefs as *amici curiae*.

After the district court denied the appellants' motions for reconsideration, the State and County timely filed this appeal. On May 11, 1995, the district court granted appellants' motion to stay the proceedings below pending the outcome of this appeal.[4]

## II. ANALYSIS

### A. Standard of Review

■ The district court's ruling on a motion of intervention as of right is reviewed de novo, but the question of timeliness of the motion is reviewed for an abuse of discretion. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir.1995); *Sierra Club v. United States EPA*, 995 F.2d 1478, 1481 (9th Cir.1993).

### B. Legal Standard

■ To intervene as of right under Fed. R.Civ.P. 24(a) the applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without him.[5] This court applies a four-part test under this rule:

(1) the motion must be timely; (2) the applicant must claim a "significantly pro-

tectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club*, 995 F.2d at 1481 (citation omitted). This court interprets the rule broadly in favor of intervention. *Id.* The timeliness of appellants' intervention motions was undisputed below, and is not at issue in this appeal.

### C. Protectable Interest Relating to the Subject of the Action

The district court held that the State and County had not asserted a legally protectable interest that relates to the subject of this action. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993) (citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302 (9th Cir.), *cert. denied*, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989)). "Nevertheless, the movant must demonstrate a 'significantly protectable interest.'" *Id.*

Relying upon dicta in our decision in *Sierra Club*, the district court ruled that "the essence of a suit brought pursuant to NEPA is that the federal government violated its procedural duties," and, therefore, "in a lawsuit to compel compliance with NEPA, *no one but the federal government* can be a defendant."[6] *See Sierra Club*, 995 F.2d at 1485.

---

4. At oral argument, the panel granted appellants' unopposed motion to supplement the record.

5. Rule 24(a) reads

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

6. In denying appellants' motions for reconsideration, the district court noted that this portion of *Sierra Club* "appears to be at odds with the general rule announced in the prior sections" of that opinion which held that an interest protected under some law that is related to the claim is sufficient to allow intervention. Nevertheless, the district court declared it "must follow the law announced [in *Sierra Club*'s dicta] until the Ninth Circuit further clarifies the circuit law with respect to intervention in NEPA actions." We do so now.

The *Sierra Club* court held that the City of Phoenix was entitled to intervene as of right in an action brought by the Sierra Club against the EPA under the Clean Water Act. The Sierra Club sought to have the EPA promulgate water quality standards for final pollutant discharge permits "that reduce toxics being discharged from each of the Arizona point sources." *Sierra Club*, 995 F.2d at 1480. "In practical terms, the Sierra Club wanted the court to order the EPA to change the City[ ] [of Phoenix's water discharge] permits." *Id.* at 1481. This court ruled that Phoenix could intervene as of right because its discharge permits, obtained pursuant to the Clean Water Act, created a legally protectable interest that related to the subject of the litigation. *Id.* at 1486.

In this case, the district court relied upon the portion of the *Sierra Club* decision that distinguished this court's earlier holding in *Portland Audubon*. The *Portland Audubon* court held that timber industry representatives did not have a significant protectable interest to warrant intervention in the Audubon Society's action that sought to compel a federal agency to prepare an environmental impact statement and to enjoin all timber sales pending its preparation. *Id.* at 304, 309. *Sierra Club* distinguished *Portland Audubon* on two bases: First, the loggers in *Portland Audubon* lacked a cognizable, legally protectable interest, because they did not have any existing legal right, contract or permits relating to the future timber sales that the Audubon Society sought to enjoin; their economic interest was "based upon a bare expectation." *Sierra Club*, 995 F.2d at 1482. In contrast, in *Sierra Club*, Phoenix had already acquired enforceable water discharge permits from the EPA under the Clean Water Act. *Id.*

Second, the loggers' economic interests in *Portland Audubon* did not relate to the subject of the action, which was federal compliance with the NEPA. *See Portland Audubon*, 866 F.2d at 309; *Sierra Club*, 995 F.2d at 1485. In contrast, *Sierra Club* was an action under the Clean Water Act, which this court found directly regulates private parties and state and local governments; thus, Phoenix was ultimately the regulated entity under the statute at issue in the litigation. *Id.*

In sum, *Sierra Club* reaffirmed that, in order to establish a protectable interest sufficient to intervene as of right, an applicant-intervenor must establish (1) "that the interest [asserted] is protectable under some law, and [ (2) ] that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club*, 995 F.2d at 1484. The district court likened the State and County to the loggers in *Portland Audubon*, because they seek to intervene as defendants in an action to compel a federal agency to comply with procedural requirements of NEPA and NFMA. Construing "the subject of the action" narrowly to include only the liability portion of the litigation, appellees argue that the State and County's interests do not satisfy the second "relationship" requirement. Appellants argue that their position is analogous to that of Phoenix in *Sierra Club* because they have asserted legally protected interests that will be directly affected by the injunction sought by plaintiffs.

■ The parties disagree over a threshold issue: what is the property or transaction that is "the subject of the action" to which an applicant-intervenor's interest must relate? Appellants contend that the "subject of the action" includes the injunctive relief sought, while appellees limit the "subject of the action" to the liability or merits portion of their complaint. We resolve this dispute by holding that when, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the "interest" test of Fed.R.Civ.P. 24(a)(2); he has a significantly protectable interest that relates to the property or transaction that is the subject of the action.

■ The State and County argue that the broad scope of the injunctive relief sought by plaintiffs [7] distinguishes this case from a typi-

---

7. As described by appellants

On its face, [the] injunction would indefinitely halt all types of forest management activities by [the] Forest Service [and its agents and contractors], including fire suppression and prevention, timber sales, pre-commercial thinning, livestock grazing, road maintenance and improvements, and the construction and im-

cal NEPA "procedural compliance" case, and that the direct effect of the injunction on their legally protected interests entitles them to intervene as of right to contest the propriety and scope of the injunction. The district court rejected this argument, noting that two of the cases cited in *Sierra Club*, in which private parties were denied the right to intervene in NEPA actions, involved requests for preliminary injunctions. *See Portland Audubon*, 866 F.2d at 304 (noting that plaintiffs sought an injunction to halt all timber sales of old-growth Douglas fir trees within 2.1 miles of known spotted owl habitat sites); *Wade v. Goldschmidt*, 673 F.2d 182, 184 (7th Cir.1982) (noting that district court had enjoined defendants from awarding a contract for the construction of a bridge). In neither of those cases, however, did the applicant intervenors assert legally cognizable interests in the property that was subject to the injunction. *See Sierra Club*, 995 F.2d at 1482 (reasoning that because the loggers in *Portland Audubon* did not have existing contracts for the timber sales that were the subject of the injunction, they had asserted "an economic interest based upon a bare expectation, not anything in the nature of real or personal property, contracts, or permits"); *Wade*, 673 F.2d at 184 (summarizing the applicant intervenors' asserted interests and finding they were not "direct, significant *legally protectable* interests in the property or transaction subject to the action") (emphasis added). Here, in contrast, the State and County have asserted tangible, concrete rights protected by various federal and state laws, as well as contracts with the federal government. Like the City of Phoenix in *Sierra Club*, appellants "own[ ] rights protected by law relating to the property which is the subject of this action." *Sierra Club*, 995 F.2d at 1482.

Other circuits have recognized that "an applicant has a sufficient interest to intervene ... where the contractual rights of the applicant may be affected by a proposed

remedy." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987) (citing *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 738 F.2d 82, 84 (8th Cir.1984), *EEOC v. AT & T Co.*, 506 F.2d 735, 741–741 (3d Cir.1974)); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir.1994) (holding that timber purchasers and processors may intervene as of right because they "have legally protectable property interests in existing timber contracts that are threatened by" the requested injunctive relief barring such sales based upon alleged NFMA violation). Accordingly, third parties have been granted leave to intervene only in the remedial phase of a case. *Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union*, 982 F.2d 1215, 1220 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2961, 125 L.Ed.2d 661 (1993); *Howard v. McLucas*, 782 F.2d 956, 960–61 (11th Cir.1986); *Kirkland v. New York State Dept. of Correctional Servs.*, 711 F.2d 1117, 1125–27 (2d Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *see also Johnson v. San Francisco Unified School Dist.*, 500 F.2d 349, 352–53 (9th Cir. 1974) (per curiam) (allowing parents of children affected by court-ordered school desegregation plan to intervene as of right for purposes of challenging remedial plan); *cf. Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d Cir.1992) (analyzing the relationship of the applicant intervenor's interest to the merits and to the remedy portions of a case independently); *Harris*, 820 F.2d at 599–600 (same); *United States v. South Florida Water Management Dist.*, 922 F.2d 704, 707 & n. 4 (11th Cir.) ("A nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly."), *cert. denied*, 502 U.S. 953, 112 S.Ct. 407, 116 L.Ed.2d 356 (1991); *Portland Audubon*, 866 F.2d at 304 (noting that timber industry representatives were permitted to intervene in relation to some of plaintiffs' claims but not others);

provement of recreational facilities. Because the requested injunction would encompass all "northern Goshawk habitat," currently an undefined and undesignated geographic territory, it would appear that FCC intends the injunction to restrict all such activities in all of Ari-

zona's 11.8 million acres of national forest lands, *and on nonfederal lands* to the extent that such activities are funded, conducted or authorized by [the] Forest Service.

Appellants' Opening Brief at 3 (footnote omitted and emphasis added).

Fed.R.Civ.P. 24 advisory committee's note (suggesting that intervention of right may be subject to appropriate conditions or restrictions). Appellants have demonstrated that the injunction sought by plaintiffs poses a "tangible threat" to their legally cognizable interests. *Harris,* 820 F.2d at 601 (stating that "the applicant must do more than show that his or her interests may be affected in some incidental manner.... [He] must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene.") (citing *United States v. Perry County Bd. of Educ.,* 567 F.2d 277, 279 (5th Cir.1978)). Indeed, because plaintiffs have included the agents and contractors of the Forest Service in their prayer for relief, and have sought to enjoin all activities authorized by the Forest Service within Northern Goshawk habitat, the appellants could be legally bound by the court's decree.

■ Injunctive relief is an equitable remedy, requiring the court to engage in the traditional balance of harms analysis, even in the context of environmental litigation. *See Thomas v. Peterson,* 753 F.2d 754, 764 (9th Cir.1985) (stating that "absent 'unusual circumstances,' an injunction is the appropriate remedy for a violation of NEPA's procedural requirements"); *see also Amoco Production Co. v. Gambell,* 480 U.S. 531, 541, 544–45, 107 S.Ct. 1396, 1403–04, 94 L.Ed.2d 542 (1987) (requiring equitable balancing of harms for injunctive relief in actions involving environmental impact, and noting, in summarizing Ninth Circuit law, that "unusual circumstances" weighing against injunctive relief include "those in which an injunction would interfere with a long-term contractual relationship") (citing *Forelaws on Board v. Johnson,* 743 F.2d 677 (9th Cir.1984), *cert. denied,* 478 U.S. 1004, 106 S.Ct. 3293, 92 L.Ed.2d 709 (1986)); *Alpine Lakes Protection Soc'y v. Schlapfer,* 518 F.2d 1089, 1090 (9th Cir.1975) (per curiam) (recognizing the potential spread of insect infestation in a forest as "unusual circumstances" in balance of equi-

ties and denying on that basis a request for an injunction pending appeal in NEPA action). Thus, should the district court find that the Forest Service has violated NEPA and/or the NFMA, the injunction sought by plaintiffs will not automatically issue. Appellants should be allowed to present evidence to the court that "unusual circumstances" weigh against the injunction sought, and to present evidence to assist the court in fashioning the appropriate scope of whatever injunctive relief is granted. *See, e.g., Seattle Audubon Soc'y v. Evans,* 771 F.Supp. 1081, 1087–95 (W.D.Wash.1991) (taking logging industry interests into account in conducting equitable balancing for NFMA violation, resulting in injunction of future timber sales, but not existing sales), *aff'd,* 952 F.2d 297, 298 (9th Cir.1991). As we indicated in *Sierra Club,* our decision in this appeal does not concern the merits of whether the injunction should issue, and if so, what its scope should be; it has to do only with whether the State and County have a right to participate in the lawsuit which seeks a judgment to that effect. *Sierra Club,* 995 F.2d at 1481; *Id.* at 1483 ("[T]he issue is participation in a lawsuit, not the outcome[.]"). We hold only that the State and County are entitled to be heard on the question of whether an injunction that would directly and immediately affect their legally protected interests should issue.[8]

We have previously recognized that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir.1980) (quoting *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir.1967)). Appellants have asserted their contractually protected rights to timber sales proceeds and revenues for forest management activities, as well as their legal duties to protect the public safety by preventing and fighting wildfires. Appellees argue that economic interests, even *if* legally

---

8. A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.
*Greene,* 996 F.2d at 980 (Reinhardt, J., dissenting) (emphasis added).

protectable, are not "related to" the NEPA claims, and, thus, do not satisfy the threshold showing of prong 2 of Fed.R.Civ.P. 24(a)(2). *Sierra Club*, 995 F.2d at 1485 ("[I]n a NEPA case, someone who will be economically worse off if an environmental impact statement precedes a major government action nevertheless has no interest protected by law in defending against the issuance of an environmental impact statement."); *Greene*, 996 F.2d at 976; *see also Nevada Land Action Assoc. v. United States Forest Service*, 8 F.3d 713, 716 (9th Cir.1993) ("[A] plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA."); *Port of Astoria, Or. v. Hodel*, 595 F.2d 467, 475 (9th Cir.1979) ("[P]ecuniary losses and frustrated financial expectations that are not coupled with environmental considerations ... are outside of NEPA's zone of interests."). Arguably, the injunction sought in this case is not the type of project-specific injunction typical of ordinary NEPA actions;[9] therefore, appellants' legally protectable economic interests may be sufficiently related to the subject of this action to warrant intervention. *See, e.g., Sierra Club v. Espy*, 18 F.3d at 1207 (holding that property interests in existing timber contracts that are threatened by injunctive relief are sufficient to warrant intervention as of right).

We need not decide whether appellants' contractually protected economic interests, as opposed to the speculative economic interests of the loggers in *Portland Audubon*, would be sufficient to entitle them to intervene as of right in the portion of this action addressing the propriety of the injunctive relief sought. *Cf. Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir.1990) (finding that a City's interests in taxing and regulating contested lands were significantly protectable interests war-

ranting intervention as of right); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997–98 (8th Cir.1993) (finding that County's tax revenues and landowners' property values that could be affected by the outcome of the litigation were protectable interests warranting intervention). Appellants have asserted other non-economic interests, such as the environmental health of, and wildfire threats to, state lands adjacent to national forests, which appellants have a legal duty to maintain. These interests are "concrete, plausible interests, within NEPA's zone of concern for the environment...." *Douglas County v. Babbitt*, 48 F.3d 1495, 1497, 1501 (9th Cir.1995) (holding that a County asserting proprietary environmental interests in lands adjacent to federal land had standing to challenge the Secretary of the Interior's failure to comply with NEPA); *see also Sierra Club v. Robertson*, 960 F.2d 83, 84 (8th Cir.1992) (finding that a State's asserted interests in fish and wildlife, recreational opportunities, and water quality were sufficient to proceed as plaintiff-intervenor challenging the Forest Service's forest management plan). Similarly, here, the State and County have asserted concrete, significant, legally protectable, non-economic interests that will be directly affected by the court's judgment regarding injunctive relief. *See Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344 (10th Cir.1978) (holding that a company whose property rights would suffer a "profound effect" if injunction issued had an interest in the subject of the action). Therefore, appellants have asserted significantly protectable interests that relate to the property or transaction that is the subject of this action.

### D. *Practical Impairment*

We must determine whether appellants' ability to protect those interests will, as a

---

**9.** At oral argument, appellees indicated they would be willing to revise their request for an injunction so that it is more limited in scope than the injunction prayed for in the complaint. Appellee may seek leave to amend the pleadings upon remand, and such amendment may affect the district court's assessment of the appellants' interest in the litigation. At this stage in the proceedings, however, we must analyze the appellants' interests relative to the prayer for relief in the plaintiffs' complaint, which was the basis

for their motion to intervene. That appellants' concerns have prompted appellees to revise their request for injunctive relief suggests that appellants may provide a beneficial "public interest" role in this litigation, by bringing to the court's attention valuable information not available to or provided by the parties. *See* Ellyn J. Bullock, Note, *Acid Rain Falls On The Just And Unjust: Why Standing's Criteria Should Not Be Incorporated Into Intervention of Right*, 1990 U.Ill.L.Rev. 605, 627–28.

practical matter, be impaired or impeded by the disposition of this action. The district court did not reach this issue or whether appellants' interests would be adequately represented by the existing parties. Because the record is sufficiently developed on these issues, which present questions of law subject to de novo review, we may address them. *In re Wind Power Systems, Inc.,* 841 F.2d 288, 290 fn. 1 (9th Cir.1988).

■ Appellees argue that appellants' ability to protect their interests will not be impaired by this action because appellants may participate in the administrative process leading up to the Forest Service's preparation of an EIS and amendment of the LRMPs and may appeal the Forest Service's final rule once it is issued.[10] Appellants counter that these administrative safeguards will not afford them any opportunity to argue the propriety of, or limit the scope of, the injunctive relief sought by plaintiffs. Although the injunction sought in this action is not literally a permanent one, expiring upon the Forest Service's compliance with NEPA and NFMA, its duration is unknown, and could potentially last for years. *See* 42 U.S.C. § 4332; 40 C.F.R. § 1506.1 (imposing no timetable for the completion of an environmental impact statement); *see also Flint Ridge Dev. Co. v. Scenic Rivers Ass'n,* 426 U.S. 776, 789 n. 10, 96 S.Ct. 2430, 2438–39 n. 10, 49 L.Ed.2d 205 (1976) (noting that 1975 data indicated that an EIS on a simple project may take up to five months to complete and an EIS on a "[c]omplex projects prepared by inexperienced personnel may take up to 18 months to prepare"). We reject appellees' claim that *amicus curiae* status is sufficient for appellants to protect their interests by expressing their concerns to the court regarding the propriety and scope of injunctive relief. *See International Union, United Automobile, Aerospace, and Agricultural Implement Workers v. Scofield,* 382 U.S. 205, 215–16, 86 S.Ct. 373, 380, 15 L.Ed.2d 272 (1965) (discussing the difference between party and amicus status); *Swan v. Peterson,* 6 F.3d 1373, 1383 & n. 10 (9th

Cir.1993) (noting that *amici* cannot introduce issues not raised by the parties), *cert. denied,* —— U.S. ——, 115 S.Ct. 479, 130 L.Ed.2d 393 (1994); *United States v. Michigan,* 940 F.2d 143, 165–66 (6th Cir.1991) (noting limitations on the rights of *amici* ). If appellants are not made a party to this action, they will have no legal means to challenge that injunction while it remains in effect. *See United States v. Oregon,* 839 F.2d 635, 639 (9th Cir.1988) (citing this circuit's precedents "recognizing practical limitations on the ability of intervention applicants to protect interests in the subject of the litigation after court-ordered equitable remedies are in place") (citations omitted); *see also Yniguez v. State of Arizona,* 939 F.2d 727, 737 (9th Cir.1991) (recognizing practical impairment of applicant intervenor's interest arising from the fact that other parties in litigation are bound by court's judgment); *Natural Resources Defense Council,* 578 F.2d at 1345 (noting that Rule 24 "refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature."); Fed.R.Civ.P. 24 advisory committee's note (stating that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene"). Thus, we find that the disposition of the remedy portion of this action will, as a practical matter, impair or impede appellants' ability to protect their interests.

### E. *Inadequate Representation*

■ The applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *California v. Tahoe Regional Planning Agency,* 792 F.2d 775, 779 (9th Cir.1986). In determining adequacy of representation, we consider whether the interest of a present party is such that it will undoubtedly make

---

10. The NFMA prescribes a range of public participation requirements with which the Forest Service must comply before amending an LRMP. *See* 16 U.S.C. § 1604(d); 36 C.F.R. § 219.6; *see*

*also Nevada Land Action Assoc. v. United States Forest Service,* 8 F.3d 713, 719 (9th Cir.1993) (discussing these procedural safeguards).

all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Tahoe Regional Planning Agency*, 792 F.2d at 778 (citations omitted). However, "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *Brody*, 957 F.2d at 1123; *see also* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1909 at 324 (2d ed. 1986). Both NEPA and NFMA and the regulations promulgated thereunder require the Forest Service to consider public input and the appellants' interests in preparing an EIS and in revising an LRMP. 42 U.S.C. § 4332; 40 C.F.R. § 1506.6; 36 C.F.R. §§ 219.8(f), 219.10(f).

█ The appellants' interests in this action, however, lie not in the procedural requirements of NEPA and NFMA with which the Forest Service must comply, but in the question of whether all forest management activities in Arizona's national forests and other Northern Goshawk habitat should be enjoined pending the Forest Service's compliance. The Forest Service is not charged with a duty to represent these asserted interests in defending against the issuance of an injunction. "[T]he government must present the broad public interest, not just the economic concerns of the timber industry." *Sierra Club v. Espy*, 18 F.3d at 1208. The Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County. *See Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000–01 (8th Cir.1993) (finding that, because the county's and landowners' "local and individual interests" were not shared by the general state citizenry, the State would not adequately represent those interests); *Con-*

*servation Law Foundation v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir.1992) (noting that "[t]he Secretary's judgments are necessarily constrained by his view of the public welfare"); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C.Cir.1977). "Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." 3B Moore's Federal Practice, ¶ 24.07[4] at 24–78 (2d ed. 1995); *see also* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *supra*, § 1909 at 317, 346.

Accordingly, appellants have satisfied the minimal showing required that the Forest Service may not adequately represent their interests in defending against the issuance of a broad injunction.

## III. CONCLUSION

█ In their timely motions to intervene, the State of Arizona and Apache County demonstrated that they have significant, legally protectable interests that relate to the subject of this action, that disposition of this action will, as a practical matter, impair or impede their ability to protect their interests, and that the Forest Service may not adequately represent their interests in contesting the injunction sought by plaintiffs. Therefore, appellants are entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2) in the portion of the proceedings addressing the injunctive relief sought by plaintiffs.[11]

REVERSED and REMANDED.

---

11. Appellants cannot claim any interest that relates to the issue of the Forest Service's liability under NEPA and NFMA. In that respect, we agree with *Sierra Club*'s statement that "in a lawsuit [only] to compel compliance with NEPA, no one but the federal government can be a defendant." *Sierra Club*, 995 F.2d at 1485.