119 F.3d 6
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Martha A. YOUNGBERG; Kent E. Youngberg, Applicants in
Intervention-Appellants,
v.
BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION;
Bank-America Corporation; Bruce Norman; Andrew
Schwartz; James Bessolo; Michael
Halloran, Defendants-Appellees.
 No. 96-16497.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted, June 12, 1997.
Decided July 25, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of California, No. CV-94-02716-CAL Charles A. Legge, District Judge, Presiding.
 
 
 2
 Before: SNEED and KLEINFELD, Circuit Judges, and WALLACH,** Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Appellants Kent and Martha Youngberg ("the Youngbergs") filed a motion to intervene, pursuant to F.R.C.P. Rule 24, in a class action lawsuit filed by plaintiff/appellee Carol Nickel. We affirm the district court's order denying the Youngbergs' motion to intervene.
 
 I.
 BACKGROUND
 A. The Nickel Action
 
 5
 In March 1994, Carol Nickel filed a class-action suit (the "Nickel action") in California Superior Court against defendants/ appellees Bank of America National Trust and Savings Association ("BofA"), BankAmerica Corporation, and several named individuals. On July 28, 1994, the case was removed to the Federal District Court for the Northern District of California. In a joint pretrial conference statement, the parties summarized the facts underlying the Nickel action as follows:
 
 
 6
 This class action arises from $24 million in overcharges of trustee fees by defendant Bank of America ... and its predecessor, Security Pacific National Bank.... The overcharges were taken from over 2,500 "contractual fee trusts," that is, trusts which contain provisions limiting the fees that may be charged. Security Pacific overcharged fees to these trusts from 1975 through its April 1992 merger into Bank of America. Bank of America, which acquired the trust department and became trustee as a result of the merger, continued the overcharges until late 1993 or early into 1994. Beginning in July, 1993 the Bank refunded the, overcharges, with interest at the rate of seven percent for the years 1975 through 1981, and ten percent thereafter, computed throughout on a simple basis.
 
 
 7
 Oil August 17, 1995, the district court bifurcated the case, designated certain claims to be decided at bench trial, and severed the other claims for a later jury trial. The claims to be decided at bench trial concerned the appropriate remedy, under California law, for breach of trust. On April 12, 1996, the district court designated Carol Nickel as the class representative, and certified a class consisting of:
 
 
 8
 [s]ettlors and beneficiaries of personal trusts that: (a) were administered, between 1975 and the present, by Security Pacific National Bank; (b) were subject to a trustee fee fixed by the trust instrument [i.e., contractual fee trusts]; and (c) received refunds. from [BofA] for possible overcharges of trustee fees.
 
 
 9
 The class certification, however, related only to the claims to be decided at bench trial. Plaintiff's motion to certify a class for the other claims was denied without prejudice.
 
 B. The Youngberg Action
 
 10
 Intervenors/appellants Martha and Kent Youngberg are income and contingent beneficiaries, respectively, of the Willis M. and Carrie M. Eason Trust (the "Eason Trust") and the Ellen M. McDuffie Trust (the "McDuffie Trust"). Security Pacific, and then its successor BofA, (collectively, "the Banks"), managed the principal and income of both Trusts. The Eason Trust, like the trusts at issue in the Nickel action, is a contractual fee trust, which limits the fees that may be charged by the Banks. The Youngbergs, as beneficiaries of the Eason Trust, are members of the class certified in Nickel. In contrast, the McDuffie Trust has no contractual fee limitation, and is therefore not within the scope of the Nickel action.
 
 
 11
 In July 1993, eight months before commencement of the Nickel action, the Youngbergs filed suit against the Banks in San Francisco County Superior Court, raising both individual and class-action claims related to fees charged by the Banks for management of both trust accounts (the "Youngberg action"). In December 1993, the parties stipulated to the transfer of the action to Los Angeles County. Although the Youngbergs filed their suit eight months prior to commencement of the Nickel action, the Youngberg action has proceeded very slowly. As of the time when briefs were filed for this appeal (January 1997), the plaintiffs in the Youngberg action had still not filed a motion for class certification. In contrast, the court certified a class for the Nickel action in April 1996, and conducted a bench trial in September and October of 1996.
 
 
 12
 The third amended petition in the Youngberg action was filed on April 30, 1996, and alleged six distinct causes of action, including five class action claims and one individual claim. The Youngbergs' fifth cause of action, like the claims at issue in Nickel, is a class action claim that relates to contractual fee trusts, and concerns the appropriate remedy under California law for breach of trust. The first four causes of action, on the other hand, are all class action claims that relate both to contractual fee trusts and other trusts. Each such cause of action concerns a different type of allegedly improper fee the Banks charged their clients. It is unclear whether, or to what extent, the allegedly improper fees at issue in the first four causes of action in Youngberg may have been included in the $24 million of overcharges that BofA has already refunded, and that form the basis of the Nickel action.
 
 C. The Motion to Intervene
 
 13
 The Youngbergs were unaware of the pendency of the Nickel action until January 22, 1996. Shortly thereafter, the Youngbergs' attorney wrote to BofA's attorney to request information about Nickel. After failing to receive what was considered a satisfactory response, the Youngbergs' attorney wrote to Judge Legge, the presiding judge in the Nickel action, to advise him of the pendency of the Youngberg case. On May 20, 1996, the Youngbergs filed a motion to intervene in the Nickel action. At a hearing on June 28, 1996, Judge Legge denied the Youngbergs' motion to intervene, "both as to intervention of right and as to permissive intervention." The Youngbergs timely appealed. The appeal concerns only intervention as of right.
 
 II.
 JURISDICTION
 
 14
 The district court had supplemental jurisdiction over the Youngbergs' motion to intervene pursuant to 28 U.S.C. § 1367(a). Denial of the motion to intervene is an immediately appealable final order. United States v. City of Oakland, Cal., 958 F.2d 300, 302 (9th Cir.1992); Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 377 (1987).
 
 II.
 ANALYSIS
 
 15
 A motion to intervene as of right is governed by rule 24(a) of the Federal Rules of Civil Procedure. We apply a four-part test to evaluate such motions:
 
 
 16
 (1) the motion must be timely;
 
 
 17
 (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
 
 
 18
 (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
 
 
 19
 (4) the applicant's interest must be inadequately represented by the parties to the action.
 
 
 20
 Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1493 (9th Cir.1995). It is uncontested that the Youngbergs have a significant protectable interest relating to the Nickel action. They are members of the Nickel class. However, the parties dispute the other three elements of the four-part test.
 
 A. Timeliness
 
 21
 The district court found that the Youngbergs' motion to intervene was timely. Defendants/appellees concede that the motion was timely at the time it was filed, but they argue that it is no longer timely. Implicit in this argument is the proposition that this court should review the timeliness ruling as of the time of this appeal, rather than considering whether the motion was timely when it was filed. Defendants/appellees cite no authority for this novel proposition. The proper inquiry is whether the motion was timely at the time it was filed. The district court's ruling that it was timely, in that sense, is uncontested.
 
 B. Other Elements of the Four-part Test
 
 22
 The third element of the test for intervention as of right is whether the Youngbergs' ability to protect their interests "will, as a practical matter, be impaired or impeded by the disposition" of the Nickel action. Forest Conservation Council, 66 F.3d at 1497-98. The fourth element is whether the plaintiff in Nickel adequately represents the Youngbergs' interests. The district court found that the Youngbergs' motion to intervene failed on both counts. Appellants here contend that both are satisfied. To analyze these issues properly, it is important to distinguish among several different interests that the Youngbergs assert are relevant to the Nickel action.
 
 
 23
 1. Contractual Fee Trusts vs. Other Trusts: The Youngbergs, as previously stated, are beneficiaries of one contractual fee trust (the Eason Trust) and one other trust (the McDuffie Trust). The Youngbergs' interest as beneficiaries of the Eason Trust is distinct from their interest as beneficiaries of the McDuffie Trust. Because the Nickel class includes only beneficiaries of contractual fee trusts, the class representative in Nickel does not adequately represent the Youngbergs' interest as beneficiaries of the McDuffie Trust. On the other hand, the Nickel action is unlikely, as a practical matter, to impair the Youngbergs' ability to protect their interest as beneficiaries of the McDuffie Trust, because, to repeat, the scope of the Nickel action is limited to contractual fee trusts. Thus, the Youngbergs' interest as beneficiaries of the McDuffie Trust will not be impaired by the Nickel action nor would the class representative in the Nickel action adequately represent the Youngbergs' interest in that trust. Therefore, the Youngbergs' interest as beneficiaries of the McDuffie Trust cannot justify intervention as of right.
 
 
 24
 2. Refund Claims vs. Other Claims: With respect to contractual fee trusts in general, and the Eason trust in particular, the Youngberg action raises certain claims that relate to the refunds paid by BofA beginning in July 1993 ("refund claims"), as well as other claims unrelated to those refunds. The class representative in Nickel cannot adequately represent the Youngbergs' interests, insofar as those interests are unrelated to the refunds. These interests are unrelated to the refunds and are outside the scope of the Nickel action. It follows that these interests are outside the scope of Nickel. The Youngbergs' ability to protect those interests will not, "as a practical matter, be impaired or impeded by the disposition" of the Nickel action. Forest Conservation Council, 66 F.3d at 1497-98. Therefore, the Youngbergs' interest in claims unrelated to the refunds cannot justify intervention as of right.
 
 
 25
 3. Baseline Claims vs. Remedy Claims: BofA paid approximately $41.8 million in refunds, including $23.9 million in overcharges and $17.8 million in interest. Plaintiffs might raise two types of claims with respect to the adequacy of the refunds: (1) that the overcharges actually exceeded $23.9 million ("baseline claims"); or (2) that, assuming the $23.9 million figure is correct, refund of the overcharges plus $17.8 million in interest is an inadequate remedy ("remedy claims"). The Youngberg action raises both types of claims.[1]
 
 
 26
 The Nickel action apparently also raised both baseline claims and remedy claims. But the district court, when it bifurcated the case, decided to focus the bench trial exclusively on the remedy claims. Moreover, in denying the Youngbergs' motion to intervene, the district court stated explicitly that the denial was "without prejudice" to the Youngbergs' ability to intervene in later phases of the case, after the bench trial. Because the bench trial relates only to remedy claims, and inasmuch as the denial of the motion to intervene relates only to the bench trial, the Youngbergs' ability to protect their interest in raising baseline claims, either in a subsequent phase of the Nickel action, or in the Youngberg action, "will [not], as a practical matter, be impaired or impeded" by denial of their motion to intervene. Forest Conservation Council, 66 F.3d at 1497-98. Therefore, the Youngbergs' interest in raising baseline claims cannot justify intervention as of right.
 
 
 27
 4. Inadequate Representation: Given the narrow scope of the Nickel action, the only interest of the Youngbergs that "will, as a practical matter, be impaired or impeded by the disposition" of the Nickel action, id., is the Youngbergs' interest as beneficiaries of the Eason Trust in remedy claims related to the refunds paid by BofA beginning in July 1993. That interest satisfies the third element (impairment of interests) of the four-part test.
 
 
 28
 However, that interest is precisely the interest that the plaintiff in the Nickel action seeks to vindicate. Moreover, the district court found explicitly that the representative in Nickel has done a more than adequate job of representing that interest. Indeed, the Youngbergs do not contest the fact that Ms. Nickel has adequately represented that particular interest. Instead, they attempt to satisfy the fourth element (inadequate representation) by arguing that Ms. Nickel cannot adequately represent their broader interests.
 
 
 29
 The Youngbergs, however, lack the right to intervene under F.R.C.P. Rule 24(a) unless they can identify a single interest that satisfies all four elements.[2] This they cannot do. Instead, they seek to satisfy the four-part test by relying on different interests to satisfy different elements of the test. Thus, they assert the set of interests (the remedy claims) that are directly related to the Nickel action, which they (implicitly) concede are adequately represented by Ms. Nickel. Those interests satisfy the third element of the four-part test (impairment of interests), but not the fourth element (inadequate representation). The Youngbergs also assert a different set of interests (the baseline claims) that Ms. Nickel does not adequately represent, but that are clearly distinct from the claims at issue in the bench trial in Nickel. Those interests satisfy the fourth element of the test, but not the third element. Thus, the Youngbergs have failed to identify a single interest that meets the criteria for intervention as of right.
 
 C. Other Issues
 
 30
 Appellants claim that the Notice to the Class in the Nickel action establishes a right for them to intervene, independent from the requirements of F.R.C.P. Rule 24(a). This claim is without merit. The Notice to the Class states:
 
 If you remain a member of the class:
 
 31
 Carol Nickel and her attorneys, the Mills Firm, will act as your representative and counsel for the presentation of the refund claims. If you desire, you may appear by and through your own attorney. You may also seek to intervene individually and may advise the Court if at any time you believe that you are not being fairly and adequately represented by the named plaintiff or her attorneys.
 
 
 32
 By its own terms, the notice clearly establishes a right to "advise the Court" and a right to "appear" through an attorney, provided you are a member of the class. Nothing in the notice implies that the court is required to grant a motion to intervene that does not satisfy the criteria in Rule 24(a). Thus, appellants' argument that the class notice establishes an independent right of intervention is unpersuasive.
 
 IV.
 CONCLUSION
 
 33
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 Honorable Evan J. Wallach, Judge, United States Court of International Trade, sitting by designation
 
 
 *
 This disposition is not appropriate for publication may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Aside from the Youngbergs' fifth cause of action, which overlaps substantially with the remedy claims raised in the Nickel action, the Youngbergs introduced claims related to "sweep fees," stock and bond management fees, real property management fees, and other "unreasonable and excessive" trustee fees. Those claims relate both to contractual fee trusts and other trusts. Assuming that those claims are well founded, insofar as they relate to contractual fee trusts they could support an allegation that the $23.9 million "baseline" figure that Nickel takes for granted is too low
 
 
 [2]
 Rule 24(a) states:
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 (emphasis and numbers in brackets added).