1405

Broadus L. THOMASSON, as General Partner of Thomasson Properties, a South Carolina Limited Partnership, Appellant v. OCEAN POINT GOLF, INC., Byron J. Comstock, Jr., and Everett Comstock, Jr. d/b/a Ocean Point Golf Links, and Palmetto State Bank, Defendants, Of Whom, Palmetto State Bank is Respondent.

(386 S. E. (2d) 282)

Court of Appeals

*David A. White* and *Benjamin A. Johnson,* both of *Roddey, Carpenter & White,* Rock Hill, *for appellant.*

*J. Thomas Mikell,* Beaufort, *for respondent.*

Heard Sept. 20, 1989.

Decided Oct. 30, 1989.

CURETON, Judge:

This appeal involves a dispute between a landlord and a bank as to the ownership of a fund. The crux of the dispute is an assignment of funds by the tenant of the landlord to the bank as security for loans obtained by the tenant from the bank. The trial court directed a verdict for the bank. The landlord appeals. We affirm the result reached by the trial court.

Thomasson Properties (Thomasson) is the landlord. In December of 1982 Thomasson entered into a lease agreement with Byron and Everett Comstock d/b/a Ocean Point Golf Links for the lease of an eighteen hole golf course on Fripp Island. The lease agreement imposed certain duties on the Comstocks such as maintenance of the premises, payment of taxes, procurement of insurance, and payment of rent. The lease was for a one year term with the right of renewal for two separate one year terms. The lease would expire on December 31, 1985, if all renewals were exercised.

The Comstocks operated the golf course during 1983 and 1984. As 1984 was coming to a close they indicated a desire to renew the golf lease for the final one year term. The record indicates Thomasson and the Comstocks were in disagreement over several matters pertaining to the operation of the golf course. Discussions took place between the Comstocks and Thomasson but it does not appear any real resolution of matters occurred. One of the issues in dispute was the distribution of the Fripp Island Club dues for 1985. This club handled golf and tennis memberships for the amenities on Fripp Island. The dues and fees were divided on a percentage basis between Thomasson Properties, the tennis lessee, and the Comstocks as the golf lessee. Broadus Thomasson testified it was his intention that the dues would be distributed on a $\frac{1}{12}$ per month basis during the final year

so that Thomasson Properties as landlord could be assured the golf course would be properly maintained during the final year of the lease. Byron Comstock testified he never agreed to such a distribution and it was his position the dues were to be distributed in three installments in February, August, and November. He testified this was the plan of distribution contemplated by the tennis lease and incorporated by reference into the golf lease. The tennis lease provided that dues would be distributed as follows:

> a. For the period November 1, 1982, through May 31, 1983, distributions will be made on a monthly basis;
> b. Thereafter, distributions will be made on August 31, 1983, November 30, 1983, February 28, 1984, August 31, 1984, November 30, 1984, and February 28, 1985.

Paragraph 16 of the golf lease stated, in part, "these funds [club dues] are to be distributed in the manner provided in the contract between the lessor and the lessee of the tennis complex."

The third party in this case is the Palmetto State Bank. In 1984 Byron Comstock borrowed funds from the bank. As security for the loans Palmetto took an assignment from the Comstocks of their right to receive the Fripp Island Club dues. Thomasson was given notice of assignment and 1984 passed uneventfully with distribution of club funds jointly to the Comstocks and Palmetto. In January of 1985, the Comstocks executed another assignment of the funds to Palmetto. The administrator of the Fripp Island Club acknowledged receipt of the assignment. It is at the point of the February 1985 distribution that the controversy begins. Thomasson took the position the Comstocks were only entitled to a monthly distribution of approximately $22,000. The Comstocks disagreed and threatened to close the golf course if they were not paid $160,000 which they claimed was their entitlement at that time. Palmetto joined the dispute on the side of the Comstocks. Ron Carter, an officer of Palmetto, had a heated discussion with the general manger of Thomasson Properties concerning the dues. In mid-March Thomasson Properties apparently relented and paid the Comstocks and Palmetto jointly approximately $160,000. In March of 1985, Byron Comstock owed Palmetto $100,000

in the form of two notes of $40,000 and $60,000. Palmetto applied $17,000 each to reduce the principal on the two notes. Palmetto claims it then renewed the notes in May and July, 1985. The bank apparently did not at the time of these renewals have the Comstocks execute a new written assignment of their interest in the club dues. The notes indicate on their face, however, that the club dues were given as collateral for the debts. Palmetto claims it relied on the distribution scheme described by Byron Comstock and the expected distributions from the club dues account in August and November of 1985 as security for the loans.

Thomasson Properties filed suit against the Comstocks in July of 1985 claiming the Comstocks had breached the golf lease in a number of particulars. Thomasson sought ejectment of the Comstocks as well as damages for failure to pay rent, taxes, and insurance premiums. The Comstocks denied these allegations and counterclaimed against Thomasson Properties for, among other things, failure to distribute the Fripp Island Club dues. As we understand the record, no further dues were distributed to the Comstocks after the initiation of the suit.

Palmetto State Bank filed a motion to intervene claiming it had an interest in the litigation because of the assignment of the club funds by the Comstocks. The motion was granted and Palmetto joined the suit filing counterclaims against Thomasson Properties and crossclaims against the Comstocks. The lease expired on December 31, 1985, and the Comstocks vacated the golf course upon expiration of the lease. Therefore, the ejectment cause of action was moot when the case was tried in November 1986. After the trial and the disposition of trial and post-trial motions, the case was resolved in the following manner:

(1) Thomasson Properties received a verdict against the Comstocks for approximately $13,000 representing damages for claims of unpaid public service district assessments and unpaid rent,

(2) Palmetto State Bank received a directed verdict on its two counterclaims against Thomasson Properties. Thomasson was ordered to sign and deliver to the bank a check drawn on the Fripp Island Club account for the amount of $70,409.70 representing principal, interest, and attorney fees

for the collection of the two notes. If the amount in the club account was not sufficient to cover the $70,409.70 then the bank would have judgment against Byron Comstock for the balance remaining.

Thomasson Properties appeals the directed verdict in favor of Palmetto and argues it was entitled to a directed verdict in its favor. The record indicates the dispute between Thomasson Properties and the Comstocks has been resolved so the only parties to this appeal are Thomasson Properties and Palmetto State Bank.

Thomasson Properties asserts Palmetto should not have been permitted to intervene. Intervention is governed by S. C. R. Civ. P. 24. The motion to intervene appears to be based upon S. C. R. Civ. P. 24(a)(2). Palmetto claims an interest in the Fripp Island Club funds due to the assignments and asserts the disposition of the suit will impair or impede its ability to protect that interest. Thomasson's argument on this point is very brief. Further, the standard for review of a Rule 24(a)(2) motion is whether the trial judge abused his discretion in granting or denying the motion. *S. C. Tax Comm. v. Union Cty. Treasurer*, 295 S. C. 257, 368 S. E. (2d) 72 (Ct. App. 1988). We find no abuse of discretion in this case. Palmetto claimed an interest as assignee of the Comstocks in whatever Fripp Island Club funds were due to the Comstocks. Thomasson makes no convincing argument that the disposition of the suit would not impair or impede Palmetto's ability to protect that interest, nor has it convinced us that the bank's interest was adequately represented by other parties to the suit. We find no error in the order granting intervention.

As we review the record and briefs, it appears Thomasson's principal arguments fall into three categories. First, Thomasson argues the Comstocks breached the golf lease and were not entitled to the dues because of the breach. Thus, since the Comstocks were not entitled to the dues the bank was not entitled to them. Second, Thomasson asserts Palmetto had no basis to claim estoppel against it concerning distribution of the club funds because no representation was made to it and the bank had notice of the claims of Thomasson against the Comstocks. Third, Thomasson argues Palmetto waived its right to claim

further distributions from the funds because it failed to satisfy the two notes from the March, 1985, distribution of funds. Thomasson takes an all or nothing view of the matter. Thomasson claims none of the remaining club funds are due either the Comstocks or Palmetto. The Comstocks apparently do not contest Palmetto's right to whatever funds might be due to them. Palmetto claims all the funds in the account belong to it by virtue of the assignment from the Comstocks.

We believe the ultimate resolution of this case lies in the relationship between Thomasson Properties and the Comstocks. There is no valid contention that Thomasson Properties was not aware of the January 10, 1985, assignment because the March distribution was jointly paid. The record contains no written assignment of the club dues to secure the May and July 1985 notes. Thomasson claims the lack of such a written assignment affects the bank's rights to the dues. We disagree. The bank's agent testified without objection the dues served as collateral for these notes. Additionally, the notes indicate on their face that the dues were pledged as collateral. Finally, the bank alleged in its crosscomplaint against the Comstocks that it accepted assignment of the club dues as security for payment of the notes. The Comstocks admitted this allegation by failing to answer the crossclaim. Thus, as between the Comstocks and Palmetto, we must presume an assignment existed.[1] While Thomasson Properties may have had no actual notice of this assignment, it is not prejudiced by being required to pay the dues to the bank as opposed to the Comstocks. *See Southern General Factors, Inc. v. Parker Concrete Pile Co.*, 236 F. Supp. 103 (D. S. C. 1964) (acceptance by debtor was not necessary to effectuate assignment of a debt, and once debtor had notice of the assignment he is bound to pay in accordance therewith). The fundamental issue in this case is the right of the Comstocks to distribution of club funds after February, 1985. The golf lease is silent on this matter since, by reference to the tennis lease, the last named date for distribution of funds was February, 1985.

---

[1] We voice no opinion as to the form of this assignment but note that the assignment of a fund may be made orally. *See Cook v. Commercial Casualty Ins. Co.*, 160 F. (2d) 490 (4th Cir. 1947).

We hold that since the Comstocks remained as tenants until the end of the lease they were entitled under the lease to the distribution of club dues until the end of 1985. Because the jury found the Comstocks breached the lease, Thomasson Properties is entitled to damages against the Comstocks for those breaches. However, we find no support in the language of the golf lease for Thomasson's contention that once the Comstocks breached the lease they forfeited all right to the club dues.[2]

We have also considered the testimony of the Comstocks and Broadus Thomasson concerning how the dues were to be distributed in 1985. It is apparent there was no agreement between the parties. However, accepting Mr. Thomasson's position that the dues were to be distributed on a $\frac{1}{12}$ per month basis, we find that under this formula the Comstocks would have been entitled to approximately $220,000 for the period from March, 1985, through December, 1985 (i.e. $22,000 x 10 months). They received $160,000 in March, 1985. This leaves approximately $60,000 outstanding. From an affidavit in the record it appears this is approximately the sum in the Island Club account.

This analysis of the case does not require us to consider the issues of estoppel and waiver. As assignee Palmetto stands in the shoes of its assignor. *W. M. Kirkland, Inc. v. Providence Washington Ins. Co.*, 264 S. C. 573, 216 S. E. (2d) 518 (1975). Because the Comstocks are entitled to the dues then Palmetto by virtue of its assignment is also entitled to them.

■ Thomasson Properties argues the trial court committed reversible error in permitting the bank's witness to testify that the May and July 1985 notes were renewal notes. It argues the best evidence of this is the prior notes which allegedly were renewed but which were not placed into evidence. This argument is without merit. Both the May 29, 1985, note for $43,000 and the July 1, 1985, note

---

[2] The lease does not contain a forfeiture provision. At most, Thomasson would be entitled to retain the $13,000 damages the jury found was due it for breach of the lease from the distribution of the club dues to the bank. However, this offset is inapplicable under the present posture of this case because, as we understand the record, Thomasson and the Comstocks have settled their dispute.

for $23,000 have notations on them that they renewed notes of October 10, 1984, and September 4, 1984, respectively. There had been unobjected to testimony of the existence of these prior notes. It was only after Mr. Tate, an employee of the bank, attempted to testify that the prior notes had language in them which permitted renewal that Thomasson objected. The court sustained the objection. Thereafter, nothing else was said about this provision in the notes and no motion was made to strike Tate's testimony. A document may be referred to in testimony without producing it. It is only when its terms are sought to be put into evidence that the original must be produced. J. T. Thames & W. M. Von Zharen, *A Guide To Evidence Law In South Carolina* 39 (1987). Additionally, Thomasson has not shown us how the prior notes would have demonstrated the May and July 1985 notes were not renewal notes.[3]

Thomasson also complains about the court's instruction to the jury relative to the counterclaim for conversion. Thomasson Properties moved for a directed verdict on the ground it did not have exclusive control over the Island Club dues and the conversion claim amounted to a mere breach of contract. The motion was denied. Thereafter, the trial judge instructed the jury that he had granted the bank's motion for directed verdict as to its entitlement to the dues fund. Thomasson argues this instruction indicated to the jury that the Comstocks were entitled to the funds since the bank's claim was derivative as assignee.

We do not, however, find any correlation between the bank's right to the dues and the conversion cause of action. While we agree the bank's right to the dues was dependent upon a finding that Thomasson owed the Comstocks the dues the claim is based on the lease between Thomasson and the Comstocks, not on conversion of the dues. While the trial court should not have granted the bank's motion for directed verdict until after the jury established the Comstocks were entitled to the funds, we find no error because the jury

---

[3] This argument loses its significance in the light of the previous finding that the May and July notes were expressly secured by an assignment of the club dues. Tate agreed during his testimony to produce the prior notes, but the record does not reflect that he did.

verdicts implicitly found the Comstocks were entitled to the dues.

Finally, we also note there was no prejudice to Thomasson by this ruling. After instructing the jury that the measure of damages it could award if it found conversion would be $62,000,[4] the jury returned a verdict of $10,000. The trial court set it aside as being inconsistent with its instructions. We find no reversible error.

We affirm the result pursuant to Supreme Court Rule 4, Section 8.

Affirmed.

SANDERS, C. J., and SHAW, J., concur.

---

[4] This represents the balance of the dues fund which had already been awarded to the bank.