604 S.E.2d 723

Ex Parte HORRY COUNTY STATE BANK, Appellant.

In re Ken's Cabana, LLC and Winner's World, Inc. both d/b/a Winner's World Tours, a joint venture, Plaintiffs,

v.

Flemington Properties, LLC, North Myrtle Beach Marine & Boatworks, Inc., Rack Pack, Inc., RAM Corp., Inc., C & B Properties, Inc. and Stardancer Casino, Inc., Defendants,

of whom Flemington Properties, LLC and North Myrtle Beach Marine & Boatworks, Inc. are Respondents.

No. 3885.

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.
Decided Nov. 1, 2004.

504

Carroll D. Padgett, of Loris, for Appellant.

Kathryn M. Cook, of N. Myrtle Beach, for Respondents.

ANDERSON, J.:

Horry County State Bank (the Bank) appeals the trial judge's denial of its motion to intervene pursuant to Rule 24(a)(2), SCRCP in a case involving the termination of a nonexclusive easement held by Ken's Cabana, LLC (Ken's Cabana) on which the Bank held a mortgage. Because we find the trial judge did not abuse his discretion in finding the Bank's interest was adequately represented, we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

This case arises from the termination of a nonexclusive parking easement at the North Myrtle Beach Marina (the Marina). Susan and Bruce Robertson (the Robertsons) were the owners of the Marina through their company, Rack Pack, Inc. The Robertsons, as individuals, owned the River Boat Restaurant, located next to the Marina.

In May of 1999, the Robertsons sold the .14 acre River Boat Restaurant property to Ken's Cabana. At the same time, the Robertsons' company, Rack Pack, Inc., granted a nonexclusive parking easement on a 1.3 acre lot to Ken's Cabana. The easement provides:

Failure to obtain the consent of Rack Pack, Inc., its successors and/or assigns, . . . to any transfer or assignment of the rights granted to Ken's Cabana, LLC hereunder, shall terminate the rights granted hereunder. Further, the use of the paved parking lot . . . for any purpose other than parking in conjunction with an evening restaurant/lounge/nightclub business (evening being defined as the hours between 4:00 p.m. and 6:00 a.m.) . . . shall result in the termination of the parking rights granted hereunder.

Nothing in the terms of the easement required the owner of the parking lot to give the Bank notice prior to termination of

the easement, or the right to cure if the easement was violated.

In connection with the purchase of the restaurant property, the Bank issued Ken's Cabana a $448,000 loan secured by a mortgage covering both the restaurant site and the easement. The Bank did not require Ken's Cabana to notify it if the easement was terminated.

On January 23, 2001, Flemington Properties, LLC (Flemington) purchased the Marina property from Rack Pack, Inc. and became the owner of the lot on which Ken's Cabana held its parking easement. At the same time, Rack Pack, Inc. sold the assets of the Marina to North Myrtle Beach Marina and Boatworks, Inc. Flemington and North Myrtle Beach Marina and Boatworks, Inc. (Flemington/Boatworks) have a common principal, Bill Bartus.

Sometime in late 2001 or early 2002, Ken's Cabana entered into a joint venture with Winner's World, Inc. to operate a casino boat out of the restaurant property. In addition, Ken's Cabana was operating a lunch business out of the restaurant earlier than 4:00 p.m. Both of these actions violated the terms of the easement.

Based on these violations, Flemington/Boatworks terminated Ken's Cabana's parking easement by letter on January 29, 2002. Subsequently, Flemington/Boatworks posted restricted parking signs in the Marina parking lot. Ken's Cabana, Winner's World, Inc., and Winner's World Tours (collectively referred to as Ken's Cabana) initiated this action on February 7, 2002 against Flemington/Boatworks, alleging civil conspiracy, unfair trade practices, violations of the Fifth and Fourteenth Amendments, inverse condemnation, and violations of the Sherman Anti–Trust and Clayton Acts. Flemington/Boatworks answered and counterclaimed seeking a declaratory judgment affirming their termination of Ken's Cabana's easement. Flemington/Boatworks then filed a motion for summary judgment which was heard on January 30, 2003.

The trial judge granted the motion for summary judgment in favor of Flemington/Boatworks and filed an order to that effect on February 24, 2003. Ken's Cabana filed a motion to reconsider on March 5, 2003, and a hearing was set for May 27, 2003. The Bank first learned of the litigation on May 22,

2003. It promptly filed a motion to intervene pursuant to Rule 24(a)(2), SCRCP, along with a motion to set aside the summary judgment order. The motion to reconsider and the Bank's motions were heard together on May 27, 2003. The trial judge ruled from the bench, denying all three motions. The Bank appeals the denial of its motion to intervene.

## STANDARD OF REVIEW

The standard of review for a Rule 24(a)(2) motion is whether the judge abused his discretion in granting or denying the motion. *S.C. Tax Comm'n v. Union County Treasurer*, 295 S.C. 257, 260, 368 S.E.2d 72, 74 (Ct.App.1988) (citation omitted). "On reviewing the trial judge's decision as to whether adequacy of representation exists, we must appraise all of the circumstances of a particular case as to whether interests sufficiently overlap so as to deny intervention." *Berkeley Electric Co-op., Inc. v. Town of Mt. Pleasant*, 302 S.C. 186, 191, 394 S.E.2d 712, 715 (1990).

## LAW/ANALYSIS

Intervention is a procedural device whereby a third party who is not a named party in an existing lawsuit, but who has an interest in its outcome, may become a party to the action. *See Black's Law Dictionary* 826 (7th ed.1999). Intervention may be of right or permissive; intervention of right is governed by Rule 24(a), SCRCP, which is modeled after the federal rule. Intervention should be liberally granted, particularly where judicial economy will be promoted by the declaration of rights of all parties who may be affected. *See Berkeley Electric* at 189, 394 S.E.2d at 714. However, this does not mean intervention should always be granted. Instead, "we must consider the pragmatic consequences of a decision to permit or deny intervention and avoid setting up rigid applications of Rule 24(a)(2)." *Id.* "Each case will be examined in the context of its unique facts and circumstances." *Id.*

Rule 24(a) provides:
Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the

subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, a party seeking intervention under Rule 24(a)(2) must: (1) establish timely application; (2) assert an interest relating to the property or transaction which is the subject of the action; (3) demonstrate that it is in a position such that without intervention, disposition of the action may impair or impede its ability to protect that interest; and (4) demonstrate that its interest is inadequately represented by other parties. *Ex Parte Reichlyn*, 310 S.C. 495, 427 S.E.2d 661 (1993).

■ The parties do not dispute that the Bank timely filed for intervention and has an interest in the subject of the underlying action. At issue is whether Ken's Cabana adequately represented the Bank's rights.[1]

■ The burden of demonstrating inadequacy of representation is on the applicant. *Berkeley Electric* at 191, 394 S.E.2d at 715. This burden may be satisfied by a showing that the representation of the applicant's interest "may be" inadequate. *Id.* (citation omitted).

In *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir.1983), the leading case on intervention of right, the court articulated a set of factors for determining when an absent party's interest is adequately represented. The court considered "whether the [existing party] will undoubtedly make all of the intervenor's arguments, whether the [existing party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Id.* at 528 (citations omitted). Subsequently, in *Berkeley Electric,* our supreme court adopted the following *Sagebrush* factors for determining the adequacy of representation:

(1) whether the existing parties will undoubtedly make all of the intervenor's arguments; (2) whether the existing parties are capable and willing to make such arguments;

---

1. Because this case turns on adequacy of representation, we need not address whether intervention is necessary to prevent the impairment or impediment of the Bank's mortgage.

and (3) whether the intervenor offers different knowledge, experience, or perspective on the proceedings that would otherwise be absent.

*Berkeley Electric* at 191, 394 S.E.2d at 715. We find the Bank has failed to demonstrate its interest was not adequately represented by Ken's Cabana.

The trial judge found that the Bank's interest was adequately represented because "Ken's Cabana has vigorously defended against the termination of the easement," and the interests of the Bank and Ken's Cabana were essentially the same. On appeal, the Bank offers nothing to convince us otherwise. The Bank addresses no arguments or defenses that were not made by Ken's Cabana and points to no unique knowledge, experience, or perspective that the Bank could bring to the proceedings. It simply does not address the *Sagebrush* factors.

Instead, the Bank asserts Ken's Cabana "may have different intentions" than the Bank—i.e., Ken's Cabana "may desire to sell the restaurant or even declare bankruptcy," whereas the Bank is concerned with protecting its security interest. While there is nothing in the record to suggest Ken's Cabana is planning to sell the restaurant or declare bankruptcy, even if there were, this argument fails to address whether or not Ken's Cabana has adequately represented the Bank's interest in the easement. If representation could be shown inadequate by the mere possibility that two parties could have different intentions, little would be left of the doctrine of adequacy of representation.

Commentators have noted that adequacy of representation cases generally fall into one of three categories. *See* 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1909, at 318–49 (2d ed.1986). First are cases where "the interest of the absentee is not represented at all" or where "all existing parties are adverse to him." *Id.* at 319. In these situations there is an obvious lack of adequate representation. At the other extreme are cases where "the interest of the absentee is identical with that of one of the existing parties or there is a party charged by law with representing the interest of the absentee." *Id.* at 324. Examples of this second category include class actions and cases where an executor, administrator, trustee, or other

formal fiduciary represents the interest of the absent party. *Id.* In between these two extremes is the third category consisting of situations where "the interests of the absentee, and of the party thought to represent him, are different, though perhaps similar." *Id.* at 346. The case *sub judice* falls into this third category.

By focusing on the possibility that the Bank and Ken's Cabana might have different intentions, the Bank apparently would limit the denial of intervention, if at all, to that second category of cases where the interests of the parties are identical. However, that is not the law in South Carolina. Instead, we avoid "setting up rigid applications of Rule 24(a)(2)" and take each case "in the context of its unique facts and circumstances." *Berkeley Electric* at 191, 394 S.E.2d at 715. Adequacy of representation is determined by the *Sagebrush* factors. Essentially, we look to "whether the absentee is likely to have anything of his own to say that will be of value." *See* Wright & Miller at 350. The Bank points to nothing additory or instructive it would bring to the dispute, but merely reiterates that it has an interest.

The crux of the underlying case is whether Ken's Cabana will be able to continue to use the easement. The Bank's mortgage on the parking easement is only as good as Ken's Cabana's right to use it. As the trial judge found, "The rights and defenses of the Bank rise and fall with the acts and omissions of their mortgagor, Ken's Cabana." They share the same interest and objective.

In *S.C. Tax Comm'n v. Union County Treasurer,* 295 S.C. 257, 368 S.E.2d 72 (Ct.App.1988), we affirmed the trial court's denial of the South Carolina Tax Commission's application for intervention precisely because we were "unable to discern from the Commission's argument that its ultimate objective in th[e] case [was] different from that of the Auditor and Treasurer." *Id.* at 260–61, 368 S.E.2d at 74. There, the underlying action arose when Milliken & Company sued the Treasurer and Auditor of Union County to collect over $87,000 in taxes paid under protest to Union County. The Tax Commission had exempted a Milliken manufacturing establishment located in Union County from *ad valorem* taxes. The Union County Auditor and Treasurer levied a tax against Milliken

that the county characterized as a nonexempt municipal tax rather than an exempt county tax. The trial judge denied the South Carolina Tax Commission's application for intervention. In affirming, we concluded:

The burden to show that the representation may be inadequate is on the applicant. 3B J. Moore, *Moore's Federal Practice* Section 24.07[4] (2d ed.1987). *WHEN AN APPLICANT FOR INTERVENTION AND AN EXISTING PARTY HAVE THE SAME INTERESTS OR ULTIMATE OBJECTIVE IN THE LITIGATION A PRESUMPTION ARISES THAT ITS INTERESTS ARE ADEQUATELY REPRESENTED AND THE APPLICATION SHOULD BE DENIED UNLESS A SHOWING OF INADEQUATE REPRESENTATION IS MADE BY DEMONSTRATION OF ADVERSITY OF INTEREST, COLLUSION, OR NONFEASANCE.* ... [T]he County Officers' objective was to retain the tax for the county and [the Commission's] objective is to have the court rule the tax was not a county tax from which Milliken's property is exempt. We see no difference of interest.

. . . .

The Tax Commission has made no convincing showing the representation of its interest may be inadequate. It seems to argue the County Officers' interest in a determination of the issue is local while its interest is statewide. We fail to appreciate this distinction in the context of this case. **Regardless of how the parties' interests are characterized, the Commission and the County Officers seek the same outcome in the case.**

*Id.* at 260–61, 368 S.E.2d at 74 (emphasis added).

Similarly, we see no difference of interest here. Both Ken's Cabana and the Bank seek the same outcome in the case: retention of the easement. Ken's Cabana obviously wants to retain parking for its customers, and it trenchantly contended against the easement's termination. The Bank's security interest in the easement exists only so long as Ken's Cabana is allowed to use the easement. Both parties want to preserve the easement to enhance the value of the restaurant property. Apodictically, the parties seek the same outcome.

*Berkeley Electric* offers an instructive example of an intervenor satisfying the *Sagebrush* adequacy of representation factors. 302 S.C. 186, 394 S.E.2d 712. The underlying lawsuit in *Berkeley Electric* arose when Berkeley Electric sued Mt. Pleasant over the right to provide electrical services to a newly annexed area of the town. South Carolina Electric & Gas (SCE & G) moved to intervene, but the trial judge denied its motion. Our supreme court reversed, finding:

> SCE & G has raised certain issues outside the existing pleadings. SCE & G has also plead several special defenses to Berkeley Electric's complaint. Additionally, SCE & G may be able to assert certain defenses that Mt. Pleasant may or may not be able to raise. SCE & G also has the ability to bring a different perspective or experience to the proceeding that would otherwise be absent. For example, SCE & G has extensive experience in the area of territorial service questions which arise after annexation.

*Id.* at 191–92, 394 S.E.2d at 715–16.

Contrastively, the Bank has failed to raise, argue, or even mention any defense not already asserted by Ken's Cabana. The Bank had no right to notice or right to cure upon breach of the terms of the easement and thus has no independent grounds to defend the termination of the easement. The Bank does not point to any area of expertise it could bring to address the termination of the easement. It does not address the *Sagebrush* factors at all.

The Bank cites *Thomasson v. Ocean Point Golf, Inc.,* 300 S.C. 29, 386 S.E.2d 282 (Ct.App.1989), for support. *Thomasson* involved a bank's intervention in a suit between the lessor and lessee of a golf course. The bank was the assignee of the lessee's right to receive dues from the Fripp Island Club. A dispute arose between the lessor and lessee of the golf course, and the lessee's right to payment of dues was one of the contended issues. The trial judge allowed the bank's intervention, and we affirmed, stating:

> [W]e find no abuse of discretion in this case.... Thomasson makes no convincing argument that the disposition of the suit would not impair or impede [the bank]'s ability to protect [its] interest, nor has it convinced us that the bank's

interest was adequately represented by other parties to the suit. We find no error in the order granting intervention. *Id.* at 33, 386 S.E.2d at 285.

In this case the trial judge found that the Bank's interest was competently and adequately represented. His order states that Ken's Cabana vigorously defended against termination of the easement. Further, the Bank has offered nothing to show that Ken's Cabana's representation was inadequate. Therefore we find no abuse of discretion.

## *CONCLUSION*

Cognizant that intervention should be liberally granted, we come to the ineluctable conclusion that the denial of the motion to intervene in this case was properly decided by the circuit judge. The Bank and Ken's Cabana share the same ultimate objective and seek the same outcome. Based on his fact-intensive review, the trial judge found that adequate, competent, and dynamic representation of the Bank's interest occurred. Moreover, the Bank has proffered nothing pertinent to the *Sagebrush* factors. We find the trial judge did not abuse his discretion by denying the Bank's motion to intervene. Accordingly, the judgment of the trial court is

**AFFIRMED.**

GOOLSBY and WILLIAMS, JJ., concur.